UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BRIAN ALLEN,

Plaintiff,

v.

KILOLO KIJAKAZI, Commissioner of
Social Security

Defendant.

Case No.: 22-CV-1721-SBC

**ORDER ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND
DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

This action arises from the Commissioner of Social Security's ("Commissioner" or "Defendant") denial of Brian Allen's ("Plaintiff") application for disability insurance benefits under Title II ("Title II") and application for supplemental security income under Title XVI of the Social Security Act. On March 24, 2023, Plaintiff filed a Motion for Summary Judgment ("Motion"), addressing three matters, namely whether Administrative Law Judge Gregory Moldafsky ("ALJ Moldafsky") properly assessed: (1) the opinion evidence of Drs. Aberasturi, Rogina, and Hanson when determining Plaintiff's residual functioning capacity ("RFC") as to his mental limitations; (2) Plaintiff's credibility concerning his subjective limitations; and (3) an acceptable number of jobs at Step Five consistent with Plaintiff's limitations. (Doc. No. 16.) Subsequently, Defendant filed an

Opposition to Plaintiff's Motion for Summary Judgment, and Plaintiff filed his Reply in Support of his Motion for Summary Judgment. (Docs. No. 19; 20.) Having reviewed and considered the Parties' submissions and the entirety of the administrative record, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Cross-Motion for Summary Judgment. (Doc. Nos. 16; 19.) The Court elaborates below.

## II.   PROCEDURAL HISTORY

On July 5, 2017, Plaintiff filed a Title II application for disability benefits and a Title XVI application for supplemental security income, alleging he could no longer work due to a disability that began on March 12, 2015. (AR 87-88.) The Commissioner denied both claims at the initial stage on September 6, 2017. (AR 96.) Plaintiff did not appeal the Commissioner's denial.

On April 17, 2019, Plaintiff filed, for a second time, a Title II application for disability benefits and a Title XVI application for supplemental security income, alleging he could no longer work due to the same disability that began on March 12, 2015. (AR 278.) The Commissioner again denied Plaintiff's application, initially on January 30, 2020, and upon reconsideration on October 15, 2020. (AR 172-177, 178-182, 188-193, 194-199.) Plaintiff filed a written request for a *de novo* hearing before an ALJ on December 14, 2020. (AR 200-202.) ALJ Moldafsky was assigned to Plaintiff's case and conducted an oral hearing on August 10, 2021. (AR 50-86.) Plaintiff appeared and testified at the hearing. (*Id.*) Plaintiff's attorney, Matthew Estrada, and vocational expert Jacquelyn Schabacker were also present. (*Id.*)

Subsequently, on September 22, 2021, ALJ Moldafsky found Plaintiff had not been under a disability as defined under the applicable sections of the Social Security Act from March 12, 2015, through the date of his Decision. (AR 23-49.) ALJ Moldafsky opined Plaintiff had the capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: Plaintiff could (1) only stand/walk for four hours in an eight-hour workday; (2) occasionally climb ramps and stairs; (3) never climb ladders, ropes, scaffolds; (4) occasionally stoop, balance, kneel, crouch; (4) never crawl; (5)

occasionally reach overhead with the bilateral upper extremities; (6) have no more than occasional exposure to extreme cold and vibration; and (7) never worked at unprotected heights or operate a commercial vehicle; and (8) was limited to simple (as defined in the *Dictionary of Occupational Titles* ("DOT") as Specific Vocational Preparation ("SVP") ratings of 1 and 2) repetitive tasks in a work environment that was not fast paced or had strict production quotas. (AR 35.) Based on the vocational expert's testimony, Plaintiff's age, education, work experience, and RFC, ALJ Moldafsky determined Plaintiff was capable of successfully adjusting to other work that existed in significant numbers in the national economy, and therefore was not disabled within the meaning of the Social Security Act. (AR 43-44.)

Following ALJ Moldafsky's Decision, Plaintiff filed a Request for Review of Hearing Decision on November 4, 2021. (AR 276.) The Appeals Council denied Plaintiff's request on September 7, 2022, and thus finalized ALJ Moldafsky's Decision. (AR 1.) On November 4, 2022, Plaintiff filed the operative Complaint in this case pursuant to 42 U.S.C. section 405(g) ("Section 405(g)") and 1383(c), seeking review of ALJ Moldafsky's Decision. (Doc. No. 1.)

### III.    FACTUAL BACKGROUND

#### A. Plaintiff's Medical History and Treatment[1]

Plaintiff is a 39-year-old male who alleges physical and mental impairments have left him disabled and unable to work since March 12, 2015. (AR 26.) On March 12, 2015, Plaintiff was involved in a severe motor vehicle accident which included a roll-over, resulting in multiple injuries to his head, knee, neck, shoulders, and lower back. (AR 36.) Specifically, Plaintiff alleged the following impairments on his April 17, 2019, disability application: back injury (multi-level lumbar spinal fusion L4-S1); Post-Traumatic Stress Disorder ("PTSD") via car accident; impulse control problems congruent with former

---

[1] Plaintiff was both treated and evaluated by a variety of different doctors following the alleged disability onset date. For purposes of this Order, the Court only addresses the treatment and opinions of doctors whose opinions are at issue here.

concussion; depression due to chronic pain; anxiety; migraines from residual Chiari Decom/Axis rebuild surgery; throbbing to numbing pain in left hip; and tendonitis in left shoulder throughout neck. (AR 35, 54, 98.)

Plaintiff's treatment history stemmed on March 12, 2015, and included numerous procedures and clinical visits for a wide variety of complaints. For example, on September 7, 2016, Plaintiff underwent a suboccipital craniectomy, a CI laminectomy and duraplasty, and a microdissection. (AR 767.) On November 28, 2016, Plaintiff underwent a lumbar fusion and a lumbar laminectomy diskectomy (AR 781.) On May 3 and 4, 2019, Plaintiff visited urgent care at Renown Health for an abscess on his lower back. (AR 816-822.) On June 1, 2021, Plaintiff visited AFC Urgent Care due to back pain. (AR 836.)

Prior to his alleged onset date, Plaintiff completed high school and had past work experience as an assistant manager and computer repairer. (AR 43, 61-66, 80.) Plaintiff worked as a field technician until the alleged onset date of March 12, 2015. (AR 294.) Since the alleged onset date, Plaintiff has not worked or engaged in substantial gainful activity. (AR 28, 99.)

**B. Plaintiff's Medical Evaluations**

**i.  Dr. Aberasturi's Evaluation and Opinion**

Dr. Aberasturi evaluated Plaintiff on five occasions throughout October 2018, to determine if Plaintiff had any neuropsychological deficits due to Plaintiff's March 12, 2015, car accident. (AR 717-740.) Dr. Aberasturi also reviewed Plaintiff's extensive medical records, which dated back to May 26, 2016. (*Id*.) Thereafter, Dr. Aberasturi prepared a report of her findings on November 5, 2018. (*Id*.) Dr. Aberasturi observed that Plaintiff did not have any examples of rapid forgetting, did a good job understanding instructions, was friendly, and had a good sense of humor. (AR 719-720.) Dr. Aberasturi also reported that Plaintiff was very still, stiff, visibly looked in pain, had a difficult time going from sitting to standing, and typically came to the appointments complaining of headache or pain. (AR 720-721.) Dr. Aberasturi determined Plaintiff was average on the Full-Scale IQ and was average in all areas of memory besides one low average Visual

Working Memory Index Score. (AR 733.) She further reported that Plaintiff did not show significant memory decline or deficits, had issues with processing speed or memory, and that this variability is often seen in people who have issues with pain. (AR 733-734.) Dr. Aberasturi did report Plaintiff had mild issues with focus and attention. (AR 734.)

Based on her assessment, Dr. Aberasturi diagnosed Plaintiff as follows: unspecified neurocognitive disorder; circadian rhythm sleep-wake disorder; OCD and depression due to other medical conditions; Post-Traumatic Stress Disorder ("PTSD"); specific learning disorder in math; concussion; chronic pain; "Ch[i]ari" Malformation; and back and neck pain. (AR 734-735.) In relevant part, Dr. Aberasturi recommended that Plaintiff make concerted efforts to manage his chronic pain and continue to write and challenge himself mentally. (AR 735-736.)  Dr. Aberasturi added that Plaintiff would benefit from seeing a therapist to help with his OCD and mood, and that he would need to have his symptoms of fatigue and pain greatly reduced to be able to meet a regular work schedule.

### ii.  Dr. Rogina's Evaluation and Opinion

Dr. Rogina is a consultive psychologist who evaluated Plaintiff on January 13, 2020. (AR 827.) Dr. Rogina's report was based on her psychological evaluation of Plaintiff, specifically for disability adjudication purposes. (*Id.*) Dr. Rogina assessed Plaintiff as a person who had "variable abilities" to understand, remember, or carry out an extensive variety of complex instructions. (AR 832.) Dr. Rogina further determined Plaintiff was not able to understand, remember, or carry out an extensive variety of detailed instructions, but could carry out a variety of simple one or two step questions. (*Id.*) Dr. Rogina also determined that Plaintiff's significant mood disorder, as well as his personality trait problems, contaminated his cognitive functioning. (*Id.*) Dr. Rogina reported Plaintiff had somewhat limited abilities to interact appropriately with supervisors, coworkers, and the public. (*Id.*)

Based on her assessment, Dr. Rogina diagnosed Plaintiff with the following impairments: lower back problems with chronic back pain; major depressive disorder; depressive disorder due to underlying medical conditions; insomnia disorder; alcohol use

disorder; unspecified anxiety disorder; and unspecified personality disorder with avoidant and dependent traits. (AR 832-833.) Dr. Rogina opined Plaintiff required medical, psychiatric, and psychological care. (AR 833.) Dr. Rogina's final prognosis was that Plaintiff had limited ability to sustain employment by working consistently pursuant to a regular work schedule. (*Id*.)

### iii.  Dr. Hanson's Evaluation and Opinion

Dr. Hanson is a state agency medical consultant who evaluated Plaintiff on January 22, 2020. (AR 116-132.) Dr. Hanson specifically reported on Plaintiff's Mental Residual Functional Capacity ("MRFC"). (AR 128.) Dr. Hanson assessed the following: (1) Plaintiff had no understanding or memory limitations; (2) had sustained concentration and persistence limitations; (3) was moderately limited in his ability to carry out detailed instructions and interact appropriately with the general public; (4) was not significantly limited in his ability to sustain an ordinary routine without special supervision or complete a normal workday and workweek without interruptions from psychologically based symptoms; and (5) was limited in ability to socially interact. (AR 128-129.) Dr. Hanson found that Plaintiff's issues with his chronic pain and mental health issues associated with his medical condition impact Plaintiff's ability and desire to interact with others; however, Plaintiff is not significantly limited in his ability to request assistance, his ability to accept instructions and respond appropriately, his ability to get along with coworkers, or his ability to maintain socially appropriate behavior. (AR 129.)

### C. Plaintiff's Testimony and Function Report

During the August 10, 2021, telephonic hearing on Plaintiff's disability benefits application, Plaintiff testified about his current home life and personal activities. (AR 50-86.) Plaintiff testified he currently lives with his partner, two dogs, and two cats. (AR 55.) He reported that he occasionally helped care for the pets by feeding them, but he could not change the litter box or walk the dogs. (AR 56.) Plaintiff also testified that he relinquished his driver's license and could walk to run errands such as going to the store. (AR 56-57.) Plaintiff stated that he could help with light housework such as cooking, cleaning, and

vacuuming so long as it does not involve him having to squat or bend too often. (AR 66-67.) Plaintiff further explained that his partner assists him with virtually all these daily chores. *Id*. In relevant part, Plaintiff's Function Report indicated Plaintiff could only bend with assistance of a cane or counter, could not lift to any extent, felt swelling in his legs when he was on his feet for more than an hour, was unable to sit at a desk for longer than a few hours, and experienced stiffness in his joints. (AR 318.)

### D. Vocational Expert Testimony

At the August 10, 2021, hearing on Plaintiff's disability benefits application, vocational expert Jacquelyn Schabacker testified a hypothetical person with Plaintiff's capabilities and limitations would be able to perform light, unskilled work with a four-hour stand/walk limitation as: (1) a hand packager inspector, where 60,000 jobs were available nationally; (2) an electrical accessories assembler, where 180,000 jobs were available nationally; or (3) a hand trimmer, where 10,000 jobs were available nationally. (AR 82.) Additionally, the vocational expert testified regarding the existence of jobs after removing the four-hour walk/stand limitation and replacing it with sedentary work under the initial hypothetical ("amended hypothetical"). (AR 82.) Under the amended hypothetical, a person would still be able to perform in the positions of: (1) an addresser, where 13,000 jobs were available nationally; (2) an inspector, where 50,000 jobs were available nationally; or (3) a final assembler, where 50,000 jobs were available nationally. (*Id*.) All positions listed by the vocational expert in both hypotheticals had an SVP of Two. (*Id*.)

### E. ALJ Moldafsky's Decision

To assess Plaintiff's alleged disability, ALJ Moldafsky conducted the five-step sequential analysis applicable to claims for SSI benefits. ALJ Moldafsky ultimately concluded Plaintiff was not disabled within the meaning of the Social Security Act from March 12, 2015, through the date of the Decision. (AR 44.) ALJ Moldafsky made 11 findings of fact and conclusions of law:

/ / /

/ / /

(1) Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. (AR 28.)

(2) Plaintiff had not engaged in substantial gainful activity since March 12, 2015, the alleged onset date. (20 CFR 404.1571, *et seq*., and 416.971, *et seq*.). (*Id*.)

(3) Plaintiff had the following severe impairments: lumbar degenerative disc disease with ongoing back pain, status post fusion and laminectomy, Chiari malformation with suboccipital craniectomy and duraplasty, shoulder disorder, major depressive disorder, alcohol use disorder, unspecified anxiety disorder, unspecified personality disorder, obsessive compulsive disorder, neurocognitive disorder, and PTSD. (20 CFR 404.1520(c) and 416.920(c).) (*Id*.)

(4) Plaintiff did not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.) (AR 29.)

(5) Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: Plaintiff could (1) only stand/walk for four hours in an eight-hour workday; (2) occasionally climb ramps and stairs; (3) never climb ladders, ropes, scaffolds; (4) occasionally stoop, balance, kneel, crouch; (4) never crawl; (5) occasionally reach overhead with the bilateral upper extremities; (6) have no more than occasional exposure to extreme cold and vibration; and (7) never worked at unprotected heights or operate a commercial vehicle; and (8) was limited to simple (as defined in the DOT as SVP ratings of 1 and 2) repetitive tasks in a work environment that was not fast paced or had strict production quotas. (AR 35.)

(6) Plaintiff was unable to perform any past relevant work. (20 CFR 404.1565 and 416.965.) (AR 43.)

(7) At the time of ALJ Moldafsky's Decision, Plaintiff was 30 years old. For that reason, Plaintiff qualified as a younger individual aged 18-49, as of the alleged disability onset date. (20 CFR 404.1563 and 416.963.) (*Id*.)

(8) Plaintiff had at least a high school education. (20 CFR 404.1564 and 416.964.) (*Id*.)

(9) Transferability of job skills was not material to ALJ Moldafsky's determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled," whether or not Plaintiff had transferable job skills. (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2.) (*Id*.)

(10)   Considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (20 CR 404.1569(a), 416.969, and 416.969(a).) (*Id*.)

(11)   Plaintiff had not been under a disability, as defined in the Social Security Act, from March 12, 2015, through the date of ALJ Moldafsky's Decision. (20 CFR 404.1520(g) and 416.920(g).) (AR 44.)

## IV.   LEGAL STANDARD

Title 42 U.S.C. section 405(g) grants this Court the power to review and enter judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The ALJ's decision denying the disability insurance benefits should only be reversed if that decision is not supported by substantial evidence or it is based upon legal error. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "If the evidence can reasonably support either affirming or reversing a decision, the court may not substitute its judgment for that of the Commissioner." *Id*. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving

ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The court must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 2014). If the record would support more than one rational conclusion, the Court must defer to the ALJ's decision. *Andrews*, 53 F.3d at 1039-40.

## V.   DISCUSSION

### A. ALJ Moldafsky's Assessment of Medical Opinions Regarding Plaintiff's Mental Limitations

The first issue Plaintiff raises is whether ALJ Moldafsky properly assessed three examining doctors' opinions when formulating Plaintiff's RFC. Specifically, Plaintiff contends ALJ Moldafsky erred by failing to find Drs. Aberasturi, Rogina, and Hanson's medical opinions as completely persuasive. Plaintiff argues these opinions contain uncontroverted medical evidence that Plaintiff suffers from at least moderate limitations in social functioning; therefore, Plaintiff concludes, ALJ Moldafsky erred when he failed to include any social limitations in the RFC. The Commissioner counters that ALJ Moldafsky properly assessed all medical opinion advice and adequately accounted for Plaintiff's mental limitations as supported by the administrative record. The Court agrees with the Commissioner. Having reviewed the entirety of the administrative record, the Court finds ALJ Moldafsky properly assessed the three medical opinions at issue, accounted for all evidence of Plaintiff's limitations, and weighed such evidence reasonably. To that end, the Court holds that ALJ Moldafsky's Decision is supported by substantial evidence with respect to ALJ Moldafsky's assessment of Plaintiff's abilities in social functioning and Drs. Aberasturi, Rogina, and Hanson's medical opinions.

An ALJ must assess medical evaluations as well as "all of the relevant medical and other evidence" when determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). An ALJ's determination of a claimant's RFC should be affirmed if it is supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217

(9th Cir. 2005). The substantial evidence standard also applies when an ALJ assesses medical opinions. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (holding that under the new regulations, an ALJ does not need to provide "specific and legitimate" reasons for rejecting a treating or examining doctor's opinion, but instead can properly reject medical opinions by providing "an explanation supported by substantial evidence"). An ALJ "must articulate ... how persuasive" [he] finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [he] considered the supportability and consistency factors" in coming to his conclusion. *Id.* § 404.1520c(b)(2). An ALJ is the "final arbiter with respect to resolving ambiguities in the medical evidence" and can properly discount medical opinions by citing to inconsistencies within the record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

### i.   ALJ Moldafsky's Rejection of Dr. Abersturi's Opinion

In his Decision, ALJ Moldafsky considered Dr. Aberasturi's opinion that Plaintiff would have difficulty meeting a regular work schedule because of his pain and fatigue. (AR 41-42.) Ultimately, ALJ Moldafsky found Dr. Aberasturi's opinion to be unpersuasive. (AR 41.) Plaintiff argues ALJ Moldafsky "cherry picked" the record when rejecting Dr. Aberasturi's opinion. Concurrently, Plaintiff fails to grapple with the circumstance that ALJ Moldafsky cited to multiple inconsistencies in the medical record to support his reasoning. (*Id.*) ALJ Moldafsky first reasoned that Dr. Aberasturi's assessment was not supported by her own finding that "the [Plaintiff] always kept going but always verbalized some fear that he might not be able to go forward but was willing to try." (*Id.*) *Tommasetti*, 533 F.3d at 1041 (holding an ALJ may discount a doctor's opinion that is inconsistent with or unsupported by the doctor's own clinical findings). ALJ Moldafsky further discounted Dr. Aberasturi's opinion by pointing to an instance in the record where Plaintiff "had normal mood, affect, and judgment and was alert." (AR 42.) Lastly, ALJ Moldafsky reasoned Dr. Aberasturi's opinion lacked merit due to Plaintiff's self-reported abilities and activities in the Function Report, such as Plaintiff's ability to do certain household duties and care for a person with Chronic Obstructive Pulmonary

Disease ("COPD"), which indicate Plaintiff retained the functional ability to meet the demands of a regular work schedule. (AR 42.) *Ford v. Saul*, 950 F.3d 1141, 1154-55 (9th Cir. 2020) (holding an ALJ may reject a medical opinion based on inconsistencies in the record with claimant's activity levels). The Commissioner accurately states ALJ Moldafsky provided sufficient basis to discount Dr. Aberasturi's opinion, and nothing further is needed. For the reasons noted, the Court agrees and substantial evidence underlies ALJ Moldafsky's reasons for rejecting Dr. Aberasturi's opinion as inconsistent with the record.

### ii.   ALJ Moldafsky's Partial Rejection of Dr. Rogina's Opinion

Additionally, ALJ Moldafsky addressed Dr. Rogina's evaluation and specific opinion that Plaintiff has certain mental limitations, including being unable to carry out an extensive variety of detailed instructions; maintain concentration and attention in certain areas; interact appropriately with supervisors, co-workers, and the public; and sustain employment over a period of time, reliably over the days and weeks of work. (AR 41.) ALJ Moldafsky found Dr. Rogina's opinion to be only partially persuasive. (*Id.*) Plaintiff argues ALJ Moldafsky's reasoning was made in error because the ALJ did not "provide any meaningful analysis as to how he came to his conclusion[.]" (Doc. No. 16 at 9). The Court disagrees. ALJ Moldafsky acknowledged that there was evidence to support Dr. Rogina's opinion that Plaintiff has "nonexertional mental limitations[.]" (AR 41.) In doing so, ALJ Moldafsky addressed Dr. Rogina's own findings that Plaintiff had poor judgement, vocalized symptoms of anxiety and depression, and was apathetic due to his pain experiences. (*Id*.) At the same time, ALJ Moldafsky cited to inconsistencies in the record that did not support a *severe* mental limitation, such as Dr. Aberasturi's lengthy report that Plaintiff "did a good job understanding instructions, did not have any examples of rapid forgetting, had good motivation…was pleasant to be with and always looked clean… and overall was average on the Full Scale IQ." (AR 41.) *Woods*, 32 F.4th at 793 (holding an ALJ may properly rely on inconsistencies with another doctor's observations to discount a medical opinion). While ALJ Moldafsky recognized Plaintiff may suffer from mental

limitations, ALJ Moldafsky adequately pointed to instances in the record that demonstrate Plaintiff retained at least *some* mental functioning, such as the ability to follow instructions and act appropriately with others. Accordingly, the Court finds substantial evidence supports ALJ Moldafsky's partial rejection of Dr. Rogina's opinion.

### iii.   ALJ Moldafsky's Partial Rejection of Dr. Hanson's Opinion

Lastly, ALJ Moldafsky partially rejected the opinion of Dr. Hanson, who found Plaintiff had moderate limitations in interacting with others. (AR 40.) Plaintiff argues that the social limitations Dr. Hanson identified are uncontroverted, and ALJ Moldafsky thus erred when he failed to include any social limitations in the RFC. The Court again disagrees. ALJ Moldafsky found Dr. Hanson's opinion to be only partially persuasive because it was inconsistent with other evidence in the record. ALJ Moldafsky first pointed to Dr. Hanson's own notes that indicated Plaintiff "help[ed] care for partner's father and pet…and c[ould] shop for groceries and other necessities." (AR 41.) Next ALJ Moldafsky noted another contradiction in the record when, during a medical examination, Plaintiff presented as "alert and oriented,… [his] insight and judgment appeared normal, and…[he] denied anxiety." (*Id.*) The Court finds the evidence to which ALJ Moldafsky cited to find Dr. Hanson's opinion only partially persuasive is supported by substantial evidence. In particular, the Court finds that the record supports ALJ Moldafsky's finding that Plaintiff retained at least some functional ability in social functioning. *See Smartt v. Kijakazi*, 53 F.4th 489, 496 (9th Cir. 2022) (holding an ALJ may find an assessment as "overly restrictive" if there are inconsistencies in the medical record). The Court holds that ALJ Moldafsky's reasoning in partially rejecting Dr. Hanson's opinion is legally sound.

Given the above, the Court holds that ALJ Moldafsky properly assessed each medical opinion when he "[set] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[ed] his interpretation thereof, and ma[de] findings" accordingly. *Reddick*, 157 F.3d at 725. Accordingly, the Court holds that ALJ Moldafsky appropriately and sufficiently assessed the medical opinion advice of Drs. Aberasturi,

Rogina, and Hanson, and, consequently, Plaintiff's RFC was properly evaluated with regard to his social functioning.

## B. ALJ Moldafsky's Assessment of Plaintiff's Alleged Subjective Limitations

The second issue Plaintiff raises is whether ALJ Moldafsky provided clear and convincing reasons supported by substantial evidence when rejecting Plaintiff's subjective limitations. Plaintiff argues the medical record fully supports his physical limitations and ALJ Moldafsky made legal error when he failed to provide any explanation how Plaintiff's daily activities are inconsistent with Plaintiff's alleged limitations. The Commissioner disagrees and claims ALJ Moldafsky provided legally sufficient reasons for discounting Plaintiff's subjective complaints. After a thorough analysis of the record and ALJ Moldafsky's Decision, the Court finds ALJ Moldafsky failed to properly abide by the "clear and convincing" standard when discounting Plaintiff's credibility on the limiting effects of his symptoms. [2] To that end, the Court holds this error is not harmless and the matter requires a remand for further administrative proceedings.

Congress prohibits granting disability benefits based solely on subjective complaints. 42 U.S.C. § 423(d)(5)(A). An ALJ must engage in a two-step analysis to determine whether a claimant's subjective complaints regarding his symptoms, pain, and limitations are credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, an ALJ "must determine whether the claimant has presented objective medical evidence of an

---

[2] The Commissioner objects to the "clear and convincing" standard as inconsistent with the deferential substantial evidence standard set forth in 42 U.S.C. section 405(g). However, a sizable body of caselaw exists consistently supporting the Ninth Circuit's "clear and convincing" standard for an adverse credibility finding unless there is affirmative evidence of malingering; in line with such case law, the Court will hold ALJ Moldafsky to the clear and convincing standard accordingly. *E.g.*, *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017); *Glanden v. Kijakazi*, No. 22-35632, 2023 WL 7860717 (9th Cir. 2023).

underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. Second, if there is no evidence of malingering, an ALJ can only reject the claimant's subjective statements about the severity of his symptoms by offering "specific, clear, and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. This is a high standard to meet and requires an ALJ to "specifically identify the testimony she or he finds not to be credible and … explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Here, after stating the RFC, ALJ Moldafsky found that, while Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of such symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 36.) Specifically, ALJ Moldafsky rejected Plaintiff's statements concerning his symptoms based on: (1) conflict in the medical record; and (2) inconsistencies with Plaintiff's self-reported daily activities. The Court evaluates each reasoning in turn below.[3]

### i.   Conflict with Medical Record

While "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony," an ALJ must still "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Carmickle v. Commissioner,*

---

[3] Both parties briefly discuss the issue of whether ALJ Moldafsky "constructively re-opened [Plaintiff's] prior denial" with no good cause finding. (Doc. No. 16 at 10-11; Doc. No. 19 at 10; Doc No. 20 at 5.) However, the Parties offered no legal authority to support their positions on this issue for the Court to review. Nonetheless, the Court finds ALJ Moldafsky was required to consider the record as a whole, which included the records prior to the Commissioner's 2017 denial of Plaintiff's disability benefits application, in order to assess "the cumulative impact of the new and the old evidence." *Rowan v. Colvin*, 652 Fed.Appx 541, 543 (9th Cir. 2016) (unpublished). The Court declines to address the matter because it does not bear upon the Court's holding on Plaintiff's adverse credibility determination.

*Social Sec. Admin*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Reddick*, 157 F.3d at 722. The Court finds ALJ Moldafsky failed to supply clear, convincing, and specific inconsistencies to support his findings, and instead provided a lengthy summary of Plaintiff's six-year medical history. *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (holding that even though the ALJ provided "a relatively detailed overview of claimant's medical history, providing a summary of medical evidence ... is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible").

ALJ Moldafsky dedicated eight pages of his Decision to set forth various hospital visits, treatments, and evaluations in Plaintiff's medical record. (AR 35-43.) However, ALJ Moldafsky erred when he failed to connect Plaintiff's symptom testimony with objective medical record to define specific inconsistencies within the two sources. *Burrell v. Colvin*, 775 F.3 1133, 1138-39 (9th Cir. 2014) (holding the ALJ erred because he "never connected the medical record to Claimant's testimony" nor made "a specific finding linking a lack of medical records to Claimant's testimony about the intensity of [his] ... pain"). It is the role of the ALJ, not the Court, to connect the points of the record to Plaintiff's statements to identify the inconsistencies. *Treichler v. Comm. of Soc. Sec.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (holding "[a]lthough the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence").

ALJ Moldafsky cannot discredit Plaintiff's symptom testimony without first identifying which of Plaintiff's statements ALJ Moldafsky finds incredible. *Contreras v. Saul*, 477 F.Supp.3d 1107, 1122 (S.D. Cal. 2020) (holding that because the ALJ failed to identify which statements he found as incredible, the ALJ's summary of the medical record and opinion evidence were legally insufficient to discount Plaintiff's credibility). ALJ Moldafsky failed to specifically identify the inconsistencies between Plaintiff's subjective limitations and the medical record. Instead, ALJ Moldafsky recited a significant portion of the administrative record, followed by his conclusion that "th[e] evidence [was] consistent with a finding that the claimant retained the functional abilities in the above residual

functional capacity." (AR 42-43.) *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (holding that "providing a summary of medical evidence in support of a residual capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible") (emphasis in original); *Smith v. Kijakazi*, 14 F.4th 1108, 1112-13 (9th Cir. 2021) (holding that even though the ALJ discussed the claimant's medical history in great detail, the ALJ erred because he did not reject *specific portions* of the claimant's testimony with evidence relevant to that portion) (emphasis added). Even if the inconsistencies could be reasonably inferred from ALJ Moldafsky's summary, the Court declines to make those connections on behalf of the ALJ, as "the credibility determination is exclusively the ALJ's to make, and ours only to review." *Brown-Hunter*, 806 F.3d at 494. Because ALJ Moldafsky did not connect the medical record to specific inconsistencies with Plaintiff's testimony, the Court finds he failed to provide "clear and specific" reasoning legally required for an adverse credibility finding.

### ii. Inconsistencies with Daily Activities

An ALJ may properly rely on inconsistencies between a claimant's testimony and the claimant's reported daily activities as a basis for an adverse credibility determination. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). However, an ALJ must "elaborate on which daily activities conflicted with which part of Claimant's testimony." *Burrell*, 775 F.3 at 1138. The Court finds ALJ Moldafsky failed to identify how Plaintiff's reported activities contradict his testimony; instead, he simply recited Plaintiff's daily activities with a general claim that such activities "suggest that [Plaintiff] retained functional abilities." (AR 39.) For such reason, the Court concludes ALJ Moldafsky's finding is legally insufficient and elaborates below. *See Holohan*, 246 F.3d at 1208 (holding that "general findings are an insufficient basis to support an adverse credibility determination").

Here, ALJ Moldafsky failed to show how Plaintiff's daily activities were inconsistent with Plaintiff's statements concerning the intensity, persistence, and limiting effects of his subjective symptoms. The ability to brush his teeth, shower, take care of his

personal needs and occasionally help with certain household duties are consistent with Plaintiff's subjective pain and limitations. *See Garrison*, 759 F.3d at 1017 (stating an ALJ "must be especially cautious in concluding that daily activities are inconsistent about testimony about pain, because impairments that would unquestionably preclude work and all pressures of workplace environment will often be consistent with doing more than merely resting in bed all day."). While the Commissioner correctly argues an ALJ may properly rely on a claimant's daily activities when discounting his allegations of pain, ALJ Moldafsky failed to make the connection between which of Plaintiff's activities were inconsistent with his alleged symptoms and limitations. The Ninth Circuit has repeatedly recognized that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations … only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility." *Reddick*, 157 F.3d at 722; *e.g.*, *Smolen*, 80 F.3d at 1284 n.7 ("The Social Security Act does not require that claimants to be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment…"); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities…does not in any way detract from [his] credibility as to [his] overall disability.").

Further, ALJ Moldafsky erred when he "mischaracterized [Plaintiff's] testimony." *Garrison*, 759 F.3d at 1016. For example, while ALJ Moldafsky cited to Plaintiff's various activities as evidence he retained functional abilities, ALJ Moldafsky failed to acknowledge Plaintiff's repeated emphasis during the hearing that the few household duties he could perform were severely limited to the ones that did not require him to bend or squat[4]; and even then, Plaintiff still receives a large amount of assistance from his partner.

---

[4] ALJ Moldafsky stated Plaintiff "takes care of animals," but Plaintiff's testimony clarified that he was only able to occasionally feed them because he was not able to walk the dogs or clean the cat's litter box as those duties involved bending. (AR 56, 66.) ALJ Moldafsky

(AR 66-67.) *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming an ALJ's reliance on daily activities of a claimant who was able to consistently and independently perform extensive household duties such as all the cooking, laundry, shopping, and other necessary care of her two children); *see also Garrison*, 759 F.3d at 1016 (stating an ALJ mischaracterized testimony when the claimant made clear that she is regularly prohibited by pain from engaging in activities and was heavily assisted by her mother). ALJ Moldafsky's reasoning is neither persuasive nor legally sufficient; therefore, the Court holds ALJ Moldafsky erred when he failed to specify how Plaintiff's daily activities are inconsistent with or undermine his pain testimony.

Ultimately, ALJ Moldafsky failed to identify "specific, clear, and convincing reasons [to support] a finding that [Plaintiff's] limitations were not as severe as he claimed." *Ahearn v. Soul*, 988 F.3d 1111, 1117 (9th Cir. 2021). "Because the ALJ did not provide enough reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence," the error is not harmless. *Lambert*, 980 F.3d 1266, 1278 (9th Cir. 2020). The Court cannot "discern the agency's path" because ALJ Moldafsky made only a general credibility finding and did not provide any reviewable reasons why he found Plaintiff's testimony to not be credible. *Brown-Hunter*, 806 F.3d at 494. Because the Court holds that ALJ Moldafsky's adverse credibility finding was made in legal error and was not harmless, the Court must remand the matter for further administrative proceedings.

### C. ALJ Moldafsky's Step Five Findings

The third and final issue Plaintiff raises is whether ALJ Moldafsky properly identified a significant number of jobs at Step Five that are consistent with Plaintiff's limitations as supported by the record. Plaintiff's argument relies on his contention that ALJ Moldafsky erroneously included a limitation to SVP 1 and 2 jobs instead of including

---

also stated Plaintiff could vacuum but failed to account for Plaintiff's testimony that the vacuum was a very light, handheld vacuum. (AR 67.)

a limitation to simple one and two-step instructions in the RFC; therefore, Plaintiff contends, the jobs the vocational expert ("VE") identified at the hearing are in conflict with Plaintiff's limitations. The Commissioner counters that ALJ Moldafsky appropriately relied on the VE's testimony, identified a significant number of jobs in the economy, and that Plaintiff's claims of judicial error are unfounded. After careful consideration, the Court agrees with the Commissioner and holds ALJ Moldafsky made no legal error in determining Plaintiff's limitation, appropriately relied on the VE's testimony, and properly found Plaintiff could perform work that exists in significant numbers in the national economy.

"At Step Five, the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." *Rounds v. Commissioner of Social Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015). In accordance with Social Security Act regulations, *see* 20 C.F.R. sections 416.960(b)(2), 416.966(e), "an ALJ is entitled to rely on a VE's testimony to support a finding that the claimant can perform occupations that exist in significant numbers in the national economy." *Kilapatrick v. Kijakazi*, 35 F.4th 1187, 1192 (9th Cir. 2022). If there is a conflict between the VE's testimony and the DOT, such as "expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle[,]" the ALJ must reconcile and resolve the inconsistency. *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). The Ninth Circuit has held that an apparent conflict exists between a limitation to performing simple one and two-step tasks, and the demands of Level Two reasoning, which requires a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *Rounds*, 807 F.3d at 1003. However, the Ninth Circuit has declined to extend the conflict to an RFC limitation to "simple" or "repetitive" tasks, which are still consistent with Level Two reasoning. *Id.* at 1003, n.6.

The Court first addresses whether ALJ Moldafsky "confused" Plaintiff's limitations. Here, ALJ Moldafsky determined that Plaintiff is limited to "simple…repetitive tasks."

(AR 35.) Plaintiff claims this limitation is erroneous. Specifically, Plaintiff repeatedly argues "the consultative examiner limited [Plaintiff] to simple 1 and 2 step tasks[.]" (Doc. No. 16 at 16.) On its face, this statement is inaccurate. Dr. Rogina's report states "[Plaintiff] is assessed as being able to understand, remember and carry out a variety of simple one or two step instructions." (AR 832.) Dr. Rogina's report does not indicate, explicitly or implicitly, that Plaintiff is limited to simple one- and two-step instructions. While Dr. Rogina's report does state that Plaintiff "is assessed as not being able to understand, remember or carry out an extensive variety of detailed instructions[,]" she also notes that Plaintiff "is a person who has variable abilities to understand, remember or carry out an extensive variety of complex instructions[.]" (*Id.*) The Court declines to equate these assessments as "limiting" Plaintiff to simple 1 and 2 step tasks. More importantly, Plaintiff's argument wholly relies on his earlier contention that ALJ Moldafsky should have adopted Dr. Rogina's assessment. As previously discussed, ALJ Moldafsky properly found Dr. Rogina's opinion advice to be only partially persuasive because of the opinion's inconsistencies with the medical record and other doctors' observations.[5] *Tommasetti*, 533 F.3d at 1041; *Woods*, 32 F.4th at 793. Because the Court has already concluded that ALJ Moldafsky properly weighed all medical opinions at issue, the Court finds ALJ Moldafsky's RFC determination limiting Plaintiff to "simple… repetitive tasks" is legally sufficient. (AR 35.) *Kitchen v. Kijakazi*, 82 F.4th 732, 742 (9th Cir. 2023) (holding an ALJ does not need to include a limitation from a medical examiner in his RFC or hypothetical to the VE if he properly weighed the medical opinion); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (holding an ALJ's RFC finding and subsequent hypothetical to the VE were complete because the ALJ properly discounted medical expert testimony).

---

[5] The Court also notes that Dr. Hanson's MRFC report evaluated Plaintiff as having no understanding and memory limitations and that Plaintiff was only moderately limited in his ability to carry out detailed instructions. (AR 128.)

The Court next addresses whether the VE's testimony conflicted with Plaintiff's limitation to "simple…repetitive tasks[.]" At the hearing, ALJ Moldafsky gave two hypotheticals to the VE. The first concerned an individual who was "limited to light work… and would be limited to simple as defined in the DOT as SVP ratings 1 and 2; routine, repetitive tasks[.]" (AR 81.) This initial hypothetical is virtually the same as the RFC determination ALJ Moldafsky ultimately adopted in his Decision. (AR 35.) The VE identified the occupations of hand packager, electrical accessories assembler, and hand trimmer. (AR 81.) The DOT classifies all three of these jobs as Level 2 Reasoning. The second hypothetical ALJ Moldafsky gave to the VE concerned an individual who was limited to sedentary work but with all of Plaintiff's other limitations still in place. (AR 82.) In response, the VE identified the occupations of addresser, touch-up screener, and final assembler. *Id.* The DOT classifies the first two of these jobs as Level 2 Reasoning, and final assembler as Level 1 Reasoning.

ALJ Moldafsky relied on this VE testimony to conclude a significant number of jobs exist in the national economy that Plaintiff could perform. (AR 43.) Plaintiff argues that only the job of final assembler is consistent with his limitations because it is the only Level 1 Reasoning occupation, while the remaining occupations are categorized as Level 2 Reasoning. The Court disagrees with Plaintiff that he should be limited to Level 1 Reasoning. There are no obvious conflicts between Level 2 Reasoning jobs and a limitation to "simple…repetitive tasks." *See Leach v. Kijakazi*, 70 F.4th 1251, 1257 (9th Cir. 2023) (emphasizing that a limitation to "short, simple instructions" does not necessarily restrict a claimant to level-one jobs); *see also Lara v. Astrue*, 305 Fed.Appx. 324, 326 (9th Cir. 2008) (holding that someone able to perform simple, repetitive tasks is capable of doing Level 2 Reasoning jobs) (unpublished); *see also Hernandez v. Berryhill*, 707 Fed.Appx. 456, 458 (9th Cir. 2017) (holding there was no apparent conflict between a limitation to "simple, repetitive tasks" and a job which the DOT describes as requiring Level 2 Reasoning) (unpublished) (collecting cases). Because the Court finds that none of the jobs identified by the VE contradict Plaintiff's limitations, ALJ Moldafsky appropriately relied on the VE

testimony at Step Five which identified a significant number of jobs that are consistent with Plaintiff's abilities.

Finally, Plaintiff argues there is an inconsistency between the job-number estimates Plaintiff provided and those the VE reported for the occupation of final assembler. The Court finds it unnecessary to review the agency's failure to resolve this alleged discrepancy because the potential error would be harmless in light of the significant number of jobs within the other five occupations identified by the VE that Plaintiff is able to perform. *See Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir.1986) (stating that 3,750 to 4,250 jobs that exist regionally within the claimant's limitations is enough to support an ALJ's finding of "significant number of jobs."); *see also Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (same); *see also Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (same).

In summary, the Court finds ALJ Moldafsky properly "identif[ied] specific jobs existing in substantial numbers in the national economy that [Plaintiff] can perform despite [his] identified limitations." *Zavalin*, 788 F.3d at 845. Therefore, the Court holds ALJ Moldafsky made no discernable legal error in his Step Five Findings.

## VI.   CONCLUSION

Based on the foregoing, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Cross-Motion for Summary Judgment. (Doc. Nos. 16; 19.) The Court REMANDS the case for further administrative proceedings consistent with this Order. In turn, the Court DIRECTS the Clerk of the Court to enter judgment in Plaintiff's favor and close this case accordingly.

**IT IS SO ORDERED.**

Dated: December 20, 2023

Hon. Steve B. Chu
United States Magistrate Judge